Judge Owsley
delivered the opinion of the Court.
On the 28th of March, 1817, Meredith Compton, executed a bond to Joshua Faris for hundred dollars. Suit was afterwards brought by Faris upon the bond, and judgment recovered against Compton for principal and interest. Upon the judgment execution was sued out against the estate of Compton, but the amount thereof was not made by the Sheriff to whom it was directed.
Faris then exhibited his bill in equity, for the purpose of setting aside three deeds of conveyance, made by Compton to James Durham, for all his slaves and personal property The deeds all bear date the 17th of November, 1817, are referred to and made exhibits in the bill, and are alleged to have been made by Compton, with intent to defraud his creditors and prevent the collection of their just debts. Compton and Durham were both-made defendants,' and called on to answer the charges contained in the bill.
Compton and Durham both accordingly answer-ed, hut Compton afterwards departed this life, and the cause was finally heard as to Faris and Durham.
In his answer, Durham denies that the deeds of convevance to him were made by Compton with intent to hinder or delay his creditors in the coijec■-{ion of their just demands, but charges, that the *398 deeds were fairly and bona fide made upon a valuable' consideration. He also denies that Faris is a just creditor, but alleges that the bond upon which he recovered judgment, was obtained from Compton through artifice and fraud. He states, that in the absence of Compton, and without his It. owl-edge or consent, Faris caused the bond to be written, and that by concealing its contents, procured it, to be signed by Compton, under an impression ami belief that it was a bond for a conveyance of land, upon which he had settled Faris, who had married one of his daughters, and not a bond for mónev; that Compton afterwards denied the validity of the bond, and when the suit at law was brought against him, he filed a plea in substance, denying the bond. to be his deed; but that after many continuances and long after the date of the deeds of conveyance to him, Compton was induced, through the further fraud and artifice of Faris, to withdraw his plea, and suffer judgment to be rendered against him for the amount of the bond and interest &c. He alleges a combination between Faris and Compton to recover the property conveyed by the latter to him, and to divide the spoil between them. lie insists that a court of equity should not lend its aid in favor of a claim such as that of Faris, originating in, and conducted throughout with artifice and fraud*
Becree of the circuit court.
Remarks on the conduct of the parties.
On hearing, the court below dismissed Faris’ bill, and from that decree he has appealed.
In the examination of this case, we have found-nothing to approve in the conduct of either of the parties. Faris and Durham, who are sous-in-law of Compton, have both displayed an unworthy disposition to obtain from their old and helpless father-in-law, without valuable consideration, all his property and means of subsistence; and it would be difficult to decide which of them have employed the most artifice and adroitness to effect their object. But it is not by scanning the evidence to find out which of the two is most censurable that this contest is to be decided; they have brought thei® case under the consideration of the court, and if must be determined by those principles q£ law and' *399 equity, by which in like cases courts ol' chancery tire governed. 0
Compton to Durham were • fraudulent,
In some cases ¿geds to^e fraud acreditormay as-?j“l cre<1at,d shew it fraudulent,
tbe debt participa in the fir lent con' anee.
V ere we not at liberty to travel bark, and hie into tiie justness of the debt claimed by Faris, but hound to acknowledge him such a creditor of •Compton as was designed by the makers of tiie law, io be protected by the statute against fraudulent conveyances, we should have no hesitation in say? hip; that the court below should have granted the relief sought in the bill; for the circumstance of three absolute deeds, each for separate parcels of property, and all comprehending the whole of his slaves and personal estate, having been executed by Compton to Durham, at the same time carries, with it strong evidence of fraud, and when connected with the further circumstance of the property conveyed, having, after the execution of those deeds, remained for several months in the possession of Compton, prove conclusively, the deeds to be fraudulent and void, as to such creditors of Compton, as were intended to be protected by the makers of the statute against fraudulent conveyances.
But whilst we admit the deeds to he fraudulent as .to such creditors, we are not prepared to concede that a-, cording to the principles of law and usage of courts of ecpiity, the defendant in the court below was not at liberty to raise the question, and the court hound to decide, as to the justice of the complainant’s debt. It is not necessary to a decision of the present contest, to say, nor would we be understood as saying, that a defendant who holds property under a fraudulent deed, may protect his possession by any and every possible objection to the fairness and justice of the complainant’s demand.
The debt may, through the fraudulent participation of the debtor have been contracted, and as he would not, in such a case, be relieved from the effects of bis own fraud, we would not be understood to say, that any other to whom he might afterwards make a fraudulent conveyance of his property, would be allowed to protect his possession of the property, by shewing the injustice of the debt; The fraudulent vendee takes the property cmn (mere, *400 and cannot occupy more favorable ground in de*; fending the property from the claims of others than would his vendor.
But where the complainant obtains the judgment by his own fraud upon the debtor, the alienee of the debtor’s property made to avoid the payment of the creditor’s debts, may shew the fraud and repel the complaint.
©ne who conveys his nroperty to defraud his creditors, cannot by submitting to q. judgme-.t on a bond obtained by fraud, cause the property to be subjected.
Mayes, for appellant; Crittenden, for appellee:
But the injustice relied on by the defendant in this case, and that which, we apprehend, it was competent for him to urge in defence, to the relief sought by the complainant, did not arise from any improper or fraudulent act of Compton, from whom the defendant obtained the conveyances. It proceeded from the fraud and artifice of Faris, in procuring the bond for six hundred dollars, to be execute ed by Compton, without his knowledge of its contents, and when from the evidence in the cause, it is evident that he was under the impression and belief, that he was executing a bond for the conveyance of land. This fraud undoubtedly vitiated the bond, and if insisted on by Compton, would have formed a good ground in equity for relief against the judgment. It cannot, therefore, be a violation of any principle of equity or law to allow the defendant, who holds under the deeds from Compton, though he does not occupy the favored attitude of a bona fide purchaser, to avail himself, in defence of the property, of that equity, which originated before he obtained the deeds, and which would, in the hands of his vendor, have been an eife, tual shield against the complainant’s demand for relief.
The deeds, though fraudulent, are nevertheless binding between the parties, and were the defendant not permitted to avail himself of the equity which existed against thecomplaiyiant’s demand at the date of the deeds, it would be in the power of Compton? by indirect means, to overreach and do away the effect, of those deeds, which by legal operation are binding upon him, and whidh, by no direct means., could be avoided by him.
The decree must be affirmed with cost.
Chief Justice Bibb did not sit inthis catise,{